## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| NRCIA LLC, a California limited liability company; Field Gate FLP, an Oregon family limited partnership;<br><br>        Plaintiffs,<br><br>    v.<br><br>Certa Roofing LLC, a Michigan limited liability company; Sam Beydoun, an individual; Hassan Beydoun, an individual; and DOES 1-10, inclusive;<br><br>        Defendants. | Case No.: 2:26-cv-10592<br><br>**PLAINTIFFS' COMPLAINT FOR:**<br><br>1. **TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114**<br><br>2. **UNFAIR COMPETITION UNDER 15 U.S.C. §1125(a)(1)(A)**<br><br>3. **FALSE DESIGNATION OF ORIGIN & FALSE ADVERTISING UNDER 15 U.S.C. § 1125(a)(1)(B)**<br><br>4. **UNFAIR COMPETITION UNDER M.C.L. § 445.903 *et seq.***<br><br>5. **COMMON LAW TRADEMARK INFRINGEMENT & UNFAIR COMPETITION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs NRCIA LLC ("NRCIA") and Field Gate FLP ("Field Gate") (collectively with NRCIA, "Plaintiffs"), by and through its undersigned counsel, brings this action against Defendants Certa Roofing LLC, a Michigan limited liability company ("Certa Roofing"), Sam Beydoun, an individual ("S Beydoun"), Hassan Beydoun, an individual ("H Beydoun"), and DOES 1-10, inclusive (collectively with Certa Roofing, S Beydoun, and H Beydoun, "Defendants"), alleging the following:

## INTRODUCTION

1.      This is an action for willful trademark infringement and unfair competition arising from Defendants' unauthorized use in commerce of designations that are confusingly similar to Plaintiffs' federally-registered trademarks for "CERTAROOF," "CERT-A-ROOF," and "CERT-A-ROOF LEAKFREE ROOF TECHNOLOGIES" under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and for substantial and related claims of trademark infringement and unfair competition under the statutory and common laws of the State of Michigan. Defendants promote, market, and sell services utilizing the "CERTA ROOFING" brand, including via sales conversations and advertisements on the domain certaroofing.com, a website where Defendants advertise services overlapping with Plaintiffs'

2

services, and that are directed to the same consumers through the same channels

of trade. Defendants' conduct has caused and is likely to cause consumer

confusion, mistake, or deception as to the affiliation, connection, or association

of Defendants with Plaintiffs, and as to the origin, sponsorship, or approval of

Defendants' services by Plaintiffs.

2.      Plaintiffs seek both injunctive and monetary relief.

**JURISDICTION**

3.      This court has subject-matter jurisdiction over all claims in the

present case pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338, and 28

U.S.C. § 1367 because claims in this action arise under the Lanham Act, 15

U.S.C. §§ 1114 and 1125, and the related state-law and common-law claims form

part of the same case or controversy.

4.      This Court has personal jurisdiction over Defendants because

Defendants have purposefully directed into and conducted their unlawful and

damaging commercial activity within the State of Michigan, including in this

judicial district. Defendants' unlawful commercial activity includes marketing,

offering, and providing services under the "CERTA ROOFING" branding to

customers within the Eastern District of Michigan; maintaining at least one

employee, agent, or representative in Troy, Michigan; and by operating an

interactive commercial website at www.certaroofing.com that hosts

advertisements infringing Plaintiffs' trademarks while targeting and serving Michigan consumers. Defendant Certa Roofing LLC is organized and registered in the State of Michigan and operates from a location in Troy, Michigan. Because Defendants operate in Troy, Michigan and also maintain agents within and provide services in this judicial district, Defendants have reaped the benefit of the laws of this district. Accordingly, it does not offend traditional notions of fair play and substantial justice to hail Defendants into this Court.

5.      Under 28 U.S.C. § 1391, the United States District Court for the Eastern District of Michigan is the appropriate venue for this action, because (1) the claims at issue in this litigation arose in this district as a result of Defendants' purposeful marketing, sale, and performance of infringing services in this judicial district and from Defendants' maintenance of at least one employee or other agent in this judicial district, causing damage and injury to Plaintiffs, their brand, and their valuable intellectual property rights, and (2) because as described above Defendants are properly subject to personal jurisdiction in this district.

## PARTIES

6.      Plaintiff NRCIA LLC is a limited liability company organized under the laws of the State of California with its principal place of business located at 1421 N Wanda Rd., Ste 120P, Orange, CA 92867.

7.      Plaintiff Field Gate is a family limited partnership organized under

4

the laws of the State of Oregon with its principal place of business located at

5441 S Macadam Ave, Suite R, Portland, OR 97239.

8.      On information and belief, Defendant Certa Roofing LLC ("Certa

Roofing") is a Michigan limited liability company with its principal place of

business located at 880 W Long Lake Rd Ste. 225-227, Troy, MI 48098.

Defendant Certa Roofing hosts advertisements on its website and provides

services to consumers that infringe the "CERTAROOF" trademarks at issue in

this action. At all relevant times, Defendant Certa Roofing directed and or

participated in the tortious actions that have harmed Plaintiffs as set forth herein.

9.      On information and belief, Defendant Sam Beydoun ("S Beydoun")

is an individual, citizen, and resident of Michigan. On information and belief,

Defendant S Beydoun was and is an owner, founder, member, director, and/or

officer of Defendant Certa Roofing. At all relevant times, Defendant S Beydoun

directed and or participated in the tortious actions that have harmed Plaintiffs as

set forth herein.

10.     On information and belief, Defendant Hassan Beydoun ("H

Beydoun") is an individual, citizen, and resident of Michigan. On information

and belief, Defendant H Beydoun was and is an owner, founder, member,

director, and/or officer of Defendant Certa Roofing. At all relevant times,

Defendant H Beydoun directed and or participated in the tortious actions that

have harmed Plaintiffs as set forth herein.

11.     Plaintiffs are currently unaware of the true names and capacities, whether corporate, associate, individual, or otherwise, of the Defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these Defendants, and each of them, by such fictitious names. Plaintiffs will seek leave of Court to amend this Complaint to assert the true names and capacities of the fictitiously named Defendants when the same has been ascertained. Plaintiffs are informed and believe, and thereon allege, that each Defendant designated as a "DOE" herein is legally responsible for the events, happenings, acts, occurrences, indebtedness, damages, and liabilities hereinafter alleged and caused injuries and damages proximately caused thereby to Plaintiffs, as hereinafter alleged.

12.     Whenever and wherever appearing in this Complaint, each and every reference to defendant, DEFENDANT, DEFENDANTS, and any of them, is intended to be and shall be a reference to all Defendants hereto, and to each of them, named and unnamed, including all fictitiously named Defendants, unless said reference is otherwise specifically qualified.

13.     Whenever and wherever reference is made in this Complaint to any act by a Defendant or Defendants, such allegations and reference shall also be deemed to mean the acts and failures to act of each Defendant acting individually, jointly, and severally.

14.     On information and belief, Plaintiffs allege that Defendants'
unlawful conduct delineated in this Complaint actually and proximately caused
Plaintiffs' damages, for which Defendants, each of them including DOES 1
through 10, inclusive, are jointly and severally liable.

15.     On information and belief, Plaintiffs allege that at all times relevant
herein, Defendants, each of them, including DOES 1 through 10, inclusive, were
an owner, a co-owner, an agent, representative, partner, and/or alter ego of its
codefendants, or otherwise acting on behalf of each and every remaining
Defendants, and in doing the things hereinafter alleged, were acting within the
course and scope of their authorities as an owner, co-owner, an agent,
representative, partner, employee, supervisor, and/or alter ego of its co-
defendants, and at all times herein mentioned, working in concert with his or her
co-defendants and was acting with the permission, consent of, and ratification, in
concert with, and in conspiracy with, each and every one of the remaining
Defendants.

## FACTS

### A. Plaintiffs' Rights in the "CERTAROOF" Marks

16.     Field Gate is the owner of the valid and subsisting United States
Trademark Registration No. 7098255, for the trademark "CERT-A-ROOF"
("'255 Mark"), United States Trademark Registration No. 1961458, for the logo

"CERTAROOF" ("'458 Mark"), and United States Trademark Registration No. 7192463, for the logo "CERTA-A-ROOF LEAKFREE ROOF TECHNOLOGIES" ("'463 Mark") (collectively, "Plaintiffs' Marks"). Plaintiffs' Marks are registered on the Principal Register by the United States Patent and Trademark Office ("USPTO"). The '255 Mark is registered in International Class 37 in connection with building inspection during building construction, construction planning and supervision, and roof maintenance and repair. The '458 Mark is registered in International Class 37 in connection with construction, maintenance, repair, building inspection, and certification services; specializing in roofs. The '463 Mark is also registered in International Class 37 in connection with building inspections in the course of building construction, construction planning, construction supervision, roof maintenance services, and repair of roofing (collectively with the services offered under the '458 Mark and '255 Mark, "Plaintiffs' Services").

17.     NRCIA is the exclusive licensee of Plaintiffs' Marks, and the trademark license agreement between NRCIA and Field Gate mandates that NRCIA enforce the rights granted by Plaintiffs' Marks.

18.     Plaintiffs have used the '458 Mark continuously in U.S. commerce since at least as early as July 2, 1992, and the '458 Mark was granted incontestable status on or around January 10, 2002. Plaintiffs have used the '255

Mark continuously in U.S. commerce since at least December 31, 2001. Plaintiffs

have used the '463 Mark continuously in U.S. commerce since at least August 7,

2021. Plaintiffs filed the application for the '458 Mark on July 19, 1994, and the

USPTO registered the '458 Mark on March 12, 1996. Plaintiffs filed the

application for the '255 Mark on May 19, 2022, and the USPTO registered the

'255 Mark on July 4, 2023. Plaintiffs filed the application for the '463 Mark on

June 9, 2022, and the USPTO registered the '463 Mark on October 17, 2023.

Attached as Exhibit A are true and correct copies of the registration certificates

for Plaintiffs' Marks.

19.    Plaintiffs have used Plaintiffs' Marks continuously in U.S.

commerce throughout the United States since at least as early as July 2, 1992, in

connection with Plaintiffs' Services, and Plaintiffs' Marks have become

associated in the minds of consumers with Plaintiffs and Plaintiffs' Services.

Attached hereto as Exhibit B is a true and correct screenshot of a representative

sample of advertisements for Plaintiffs' Services as displayed on a licensed

NRCIA member's website, showing use of Plaintiffs' Marks.

20.    As a result of Plaintiffs' widespread, continuous, and exclusive use

of Plaintiffs' Marks to identify Plaintiffs' Services, Plaintiffs, and Plaintiffs'

licensees as the source of the services offered under Plaintiffs' Marks, Plaintiffs

own valid and subsisting federal statutory and common law rights in Plaintiffs'

Marks.

21.    Plaintiffs' Marks are distinctive to both the consuming public and Plaintiffs' trade.

22.    Plaintiffs have expended substantial time, money, and resources marketing, advertising, and promoting the services offered under Plaintiffs' Marks, including through physical and internet advertising, as well as through providing the associated services, licensing others to provide those services, and creating materials bearing Plaintiffs' Marks that are distributed to the public. Plaintiffs use Plaintiffs' Marks extensively in these marketing efforts.

23.    Plaintiffs offer and sell Plaintiffs' Services under Plaintiffs' Mark to consumers and businesses, including through the websites of Plaintiffs' affiliates such as certaroof.com.

24.    As a result of Plaintiffs' expenditures and efforts, Plaintiffs' Marks have come to signify the high quality of Plaintiffs' Services, and Plaintiffs' Marks have acquired incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiffs.

25.    Because of Plaintiffs' longstanding use of Plaintiffs' Marks in commerce, consumers recognize Plaintiffs' Marks as identifying Plaintiffs and Plaintiffs' licensees as the source of Plaintiffs' Services.

///

10

B. **Defendants' Unlawful Activities**

26.    Without Plaintiffs' authorization, and upon information and belief, beginning after Plaintiffs acquired protectable federal rights in Plaintiffs' Marks, Defendants adopted and began using "CERTA ROOFING," and/or other "CERTAROOF"-formative marks (collectively, the "Infringing Marks") in interstate commerce.

27.    Defendants utilize the Infringing Marks in Defendants' advertisement and provision of services including inspecting the quality and condition or roof construction on homes, residential structures, commercial and industrial buildings, and other real estate, as well as providing warranties or certifications based upon the results of those inspections.

28.    The Infringing Marks adopted and used by Defendants are identical or nearly identical to Plaintiffs' Marks. The literal element of Defendants' Infringing Marks is "CERTA ROOFING." The literal elements of the Infringing Marks are an exact match or nearly an exact match with Plaintiffs' Marks. Plaintiffs and Defendants are both engaged in the business of providing roof inspection services.

29.    On information and belief, Defendants have been engaged in the provision, advertising, promotion, offering for sale, and sale of services using the Infringing Marks throughout the United States via the internet. On information

11

and belief, Defendants also provide services here in Michigan, which Defendant
S Beydoun personally advertised and sold.

30.     On information and belief, the services Defendants have provided,
promoted, advertised, offered for sale, and sold under the Infringing Marks are
highly related to Plaintiffs' Services. Plaintiffs and Defendants are effectively
direct competitors, marketing to the same consumers with the same interests and
needs, offering the same types of services.

31.     On information and belief, Defendants have provided, marketed,
promoted, offered for sale, and sold their services under the Infringing Marks in
interstate commerce by advertising through the internet and by other means
including directly providing services to consumers in Michigan. Attached as
Exhibit C is a true and correct screenshot taken from Defendants' website that
describes Defendants' provision of services that are effectively identical to those
provided by Plaintiffs.

32.     On information and belief, Defendants offer and sell their services
under the Infringing Marks to consumers interested in roof inspections and
certifications, which is the same class of consumers to which Plaintiffs offer
Plaintiffs' Services.

33.     Defendants' use of the Infringing Marks includes a website and
online advertisements where Defendants use the Infringing Marks as well as

Defendants use of the Infringing Marks when Defendants' discuss their services with potential clients and customers.

34.    Despite being sent a cease-and-desist letter on October 2, 2025, regarding Defendants' conduct and use of the Infringing Marks, Defendants have not halted their activities and instead continue to offer their infringing products and services to consumers. Because Defendants are aware of Plaintiffs' trademark rights due to receiving the cease-and-desist letter from Plaintiffs' counsel, Defendants' actions constitute knowing and willful infringement. A true and correct copy of the October 2, 2025, letter sent to Defendants is attached hereto as Exhibit D.

35.    Defendants' infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendants' services and have and are likely to deceive the relevant consuming public into believing, mistakenly, that Defendants' services originate from, are associated or affiliated with, or otherwise authorized by Plaintiffs.

36.    Because of the similarity of the marks and relatedness of the goods at issue, consumers have a high likelihood of mistakenly confusing Defendants' offerings with Plaintiffs' Services.

37.    Plaintiffs have never at any point given Defendants a license or

other permission to display, copy, distribute, or otherwise use Plaintiffs' Marks

or the Infringing Marks in any manner, on any website or platform.

38.    On information and belief, Defendants' acts are willful with the

deliberate intent to trade on the goodwill of Plaintiffs' Marks, cause confusion

and deception in the marketplace, and divert potential sales of Plaintiffs' Services

to Defendants. Defendants' willful infringement is demonstrated by Defendants'

refusal to engage with Plaintiffs despite receiving a cease-and-desist letter that

plainly described Defendants' infringement of Plaintiffs' existing trademark

rights. In light of the communications sent to Defendants, Defendants are

unquestionably aware of Plaintiffs' valuable intellectual property rights but have

continued to knowingly and willfully commit acts of infringement.

39.    Defendants' acts are causing and, unless restrained, will continue to

cause incalculable damage and immediate irreparable harm to Plaintiffs and to

Plaintiffs' valuable reputation and goodwill with the consuming public for which

Plaintiffs have no adequate remedy at law.

## COUNT I

## TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114

40.    Plaintiffs reallege and incorporate by reference Paragraphs 1 through

39 of the Complaint as though fully set forth herein.

41.    Defendants' unauthorized use in commerce of the Infringing Marks

14

as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods and services are sold, authorized, endorsed, or sponsored by Plaintiffs, or that Defendants are in some way affiliated with or sponsored by Plaintiffs. Defendants' conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

42.     On information and belief, Defendants have committed the foregoing acts of infringement with full knowledge of Plaintiffs' prior rights in Plaintiffs' Marks and with the willful intent to cause confusion and trade on Plaintiffs' goodwill.

43.     Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiffs, and to Plaintiffs' goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this Court. Plaintiffs have no other adequate remedy at law.

44.     Because Defendants' infringement is willful, this case is an exceptional case as described and contemplated in the Lanham Act. Plaintiffs are accordingly entitled to enhanced remedies including injunctive relief and an award of actual damages, a disgorgement of Defendants' profits, treble damages, attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham

15

Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT II

## UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)(1)(A)

45.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 44 of the Complaint as though fully set forth herein.

46.     Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein has deceived and is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' services, and has caused and is likely to cause consumers to believe, contrary to fact, that Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiffs, or that Defendants are in some way affiliated with or sponsored by Plaintiffs.

47.     Defendants' unauthorized use in commerce of the Infringing Marks as alleged herein constitutes unfair competition and a misleading description and representation of fact.

48.     On information and belief, Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiffs.

49.     Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

16

50.     Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiffs, and to Plaintiffs' goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this court. Plaintiffs have no other adequate remedy at law.

51.     Because Defendants' conduct is willful, this case is an exceptional case as described and contemplated in the Lanham Act. Plaintiffs are accordingly entitled to enhanced remedies including injunctive relief and an award of actual damages, a disgorgement of Defendants' profits, treble damages, attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## COUNT III

## FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125(a)(1)(B)

52.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 51 of the Complaint as though fully set forth herein.

53.     Defendants' unauthorized use in commerce of Plaintiffs' Marks and/or confusingly similar variations thereof as alleged herein has deceived and is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' alleged services, and likely to cause consumers to believe, contrary to fact, that Defendants' services are sold, authorized, endorsed, or sponsored by Plaintiffs, or that Defendants are in some way affiliated with or

17

sponsored by Plaintiffs.

54.     Defendants' unauthorized use in commerce of Plaintiffs' Marks and/or confusingly similar variations thereof as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

55.     On information and belief, Defendants' conduct as alleged herein is willful, is intended to, is likely to, and has caused confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiffs.

56.     Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiffs, and to Plaintiffs' goodwill and reputation, and will continue to both damage Plaintiffs and confuse the public unless enjoined by this Court. Plaintiffs have no other adequate remedy at law.

57.     Because Defendants' conduct is willful, this case is an exceptional case as described and contemplated in the Lanham Act. Plaintiffs are accordingly entitled to enhanced remedies including injunctive relief and an award of actual damages, a disgorgement of Defendants' profits, treble damages, attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

///

///

## COUNT IV

## UNFAIR COMPETITION UNDER M.C.L. § 445.903 *et seq.*

58.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 57 of the Complaint as though fully set forth herein.

59.     Because Defendants have used and continue to use the Infringing Marks in commerce, Defendants have engaged in unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce in violation of M.C.L. § 445.903 *et seq.*

60.     Specifically, as a result of the aforesaid acts, Defendants have (1) caused a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services as prohibited by M.C.L. § 445.903(1)(a); (2) represented that their goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have as prohibited by M.C.L. § 445.903(1)(c); and (3) represented that their goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another as prohibited by M.C.L. § 445.903(1)(e).

61.     Plaintiffs are within the class intended to be protected by M.C.L. § 445.903 *et seq.*

62.     As alleged throughout this Complaint, Defendants, individually and collectively, have intentionally, deliberately, and willfully engaged in infringing actions upon Plaintiffs' Marks without express authorization and/or consent of Plaintiffs. Specifically, Defendants, without the consent and/or authorization of Plaintiffs, have intentionally, deliberately, and willfully used and/or otherwise exploited Plaintiffs' Marks and/or confusingly similar variations thereof in commerce, in an effort to advertise, promote, market, solicit, and sell Defendants' services.

63.     Additionally, as delineated herein, Defendants have intentionally, deliberately, and willfully copied and/or otherwise used Plaintiffs' Marks and/or confusingly similar variations thereof in connection with their efforts to advertise, promote, market, solicit, and sell their competing services.

64.     Such acts as described within this Complaint taken cumulatively against Defendants rise to the level of deceptive, unfair, unlawful, and wrongful conduct.

65.     By reason of Defendants' deceptive, unfair, unlawful, and wrongful conduct, Defendants have violated M.C.L. § 445.903 *et seq.*, by consummating an unlawful, unfair, and fraudulent business practice, designed to intentionally deceive the consuming public into believing that Defendants and the services being offered in commerce by Defendants are endorsed by and/or otherwise

affiliated with Plaintiffs.

66.     Specifically, as a consequence of Defendants' acts and omissions, Plaintiffs are entitled to a preliminary and permanent injunction against Defendants restraining each of them from misappropriation and false utilization of Plaintiffs' Marks as well as any confusingly similar variations thereof and from any further effort, publication, or act and omission which has the effect of leading Plaintiffs' customers and the general public into believing there is any affiliation of any kind whatsoever between Plaintiffs and Defendants.

67.     The actions of Defendants are willful and malicious. Therefore, Plaintiffs are entitled to damages in an amount necessary and sufficient to ensure that no further incidents, replication, or similar occurrence regarding the rights of Plaintiffs occur at any time in the future and is a message that such obstinate and despicable conduct is not tolerated in a civilized society, including without limitation, punitive damages.

## COUNT V

## COMMON LAW TRADEMARK INFRINGEMENT & UNFAIR COMPETITION

68.     Plaintiffs reallege and incorporate by reference Paragraphs 1 through 67 of the Complaint as though fully set forth herein.

69.     Plaintiffs have established significant goodwill and favorable public recognition in Plaintiffs' Marks through extensive use of the marks throughout

the United States in interstate commerce in connection with Plaintiffs' Services.

70.     Without Plaintiffs' consent, authorization, or knowledge, Defendants have used and continue to use Plaintiffs' Marks and/or confusingly similar variations thereof in connection with the sale, offer for sale, distribution, provision, or advertising of Defendants' goods and services, thereby trading upon the goodwill associated with Plaintiffs, and misleading the public into believing a connection or association exists between Defendants and Plaintiffs.

71.     Defendants' acts of infringement have caused and are likely to cause consumer confusion and to mislead and deceive the consuming public as to the source of Defendants' services, enable Defendants to pass off their services as Plaintiffs' Services, and falsely suggest a connection between Defendants and Plaintiffs. Defendants' actions are unauthorized by Plaintiffs' and violate Plaintiffs' common law trademark rights in the State of Michigan.

72.     As a direct and proximate result of Defendants' infringing and unfair activities, Plaintiffs have suffered and will continue to suffer significant damage in the form of loss of revenue, income, profits, and goodwill, which will increase if not enjoined, and Defendants have unfairly acquired and will continue to unfairly acquire revenue, income, profits, and goodwill and unjustly enrich themselves at Plaintiffs' expense.

73.     Defendants' trademark infringement and unfair competition has and

will continue to cause irreparable harm to Plaintiffs if Defendants are not restrained by this Court from further violation of Plaintiffs' rights. Plaintiffs have no adequate remedy at law for all of the harm being caused to Plaintiffs, particularly with respect to the loss of Plaintiffs' goodwill, market share, and mark and brand control due to Defendants' infringement. Plaintiffs are therefore entitled to and seek temporary and permanent injunctive relief.

74.    Defendants' infringement was and is tortious, malicious, willful, outrageous, oppressive, fraudulent, made in bad faith, and in conscious disregard of Plaintiffs' trademark rights. Accordingly, in addition to general and compensatory damages, Plaintiffs should be awarded exemplary, punitive, and enhanced (i.e., treble) damages sufficient to punish and make an example of Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and request judgment against Defendants as follows:

1.    That Defendants have violated Section 32 of the Lanham Act (15 U.S.C. § 1114); and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

2.    That Defendants have violated M.C.L. § 445.903 *et seq.*, and Michigan common law.

3.    That Defendants' actions in performing the above acts were willful.

4.      Granting an injunction preliminarily and permanently enjoining the Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

a.      manufacturing, distributing/providing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, distribute/provide, sell, market, advertise, or promote goods and services bearing the Infringing Marks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiffs' Marks;

b.      engaging in any activity that infringes Plaintiffs' rights in Plaintiffs' Marks;

c.      engaging in any activity constituting unfair competition with Plaintiffs;

d.      making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendants' goods or services are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Plaintiffs, or (ii) Plaintiffs' goods and services

24

are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Defendants;

e.    using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiffs or tend to do so;

f.    registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the Infringing Marks or any other mark that infringes or is likely to be confused with Plaintiffs' Marks, or any of Plaintiffs' Services, or Plaintiffs as their source; and

h.    aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (f).

5.    Directing Defendants to transfer the www.certaroofing.com domain to Plaintiffs.

6.    Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised,

promoted, or otherwise offered or circulated by Defendants are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by, or associated, affiliated, or otherwise connected with Plaintiffs or constitute or are connected with Plaintiffs' goods or services.

7. Directing Defendants to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale, and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, websites, and any other materials that feature or bear any designation or mark incorporating the Infringing Marks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiffs' Marks, and to direct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, host, or offer for sale Defendants' goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing the Infringing Marks or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Plaintiffs' Marks, and to immediately remove the same from public access and view.

26

8.      Directing that Defendants recall and deliver up for destruction all goods, packaging, shopping bags, containers, advertisements, promotions, signs, displays, stickers, and related materials incorporating or bearing the Infringing Marks or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Plaintiffs' Marks.

9.      Directing Defendants to formally abandon with prejudice any and all of their applications to register the Infringing Marks or any mark consisting of, incorporating, or containing Plaintiffs' Marks or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof on any state or federal trademark registry.

10.     Directing Defendants to cancel with prejudice any and all of their registrations for the Infringing Marks or any mark consisting of, incorporating, or containing Plaintiffs' Mark or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof on any state or federal trademark registry.

11.     Directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a)), Defendants to file with the court and serve upon Plaintiffs' counsel within thirty (30) days after service on Defendants of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendants have complied

therewith.

12.     Awarding Plaintiffs an amount up to three times the amount of their actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

13.     Directing that Defendants account to and pay over to Plaintiffs all profits realized by their wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiffs for the damages caused thereby.

14.     Awarding Plaintiffs punitive and exemplary damages as the court finds appropriate to deter any future willful infringement.

15.     Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiffs their costs and attorneys' fees under 15 U.S.C. § 1117(a).

16.     Awarding Plaintiffs interest, including prejudgment and post-judgment interest, on the foregoing sums.

///

///

///

17.    Awarding such other and further relief as the Court deems just and

proper.

Respectfully submitted,


Dated:  February 18, 2026          By:  /s/ Nathan Camuti
                                   Nathan Camuti
                                   nate@camutilaw.com
                                   CAMUTI LAW GROUP APC
                                   33 Brookline
                                   Aliso Viejo, CA 92656
                                   Telephone: 949.716.5565

                                   *Lead Counsel for Plaintiffs*

                                   J. Bradley Luchsinger (P76115)
                                   bluchsinger@harnessip.com
                                   HARNESS, DICKEY & PIERCE, P.L.C.
                                   100 Bloomfield Hills Parkway, Suite 200
                                   Bloomfield Hills, MI 48304
                                   248-641-1600

                                   *Local Counsel for Plaintiffs*